IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-19-073-R |
| ) | |
| DOMINIC EUGENE HUNT, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Before the Court is Defendant Dominic Hunt's Motions to Suppress Evidence Found During an Illegal Search of his Vehicle and Residence and Request for Hearing, Doc. Nos. 68, 69, in addition to his "Motion to Suppress Evidence and Request for *Jackson v. Denno* Hearing," Doc. No. 70. The Government has responded to each motion, Doc. No. 78, and Mr. Hunt has failed to reply. Upon review of the parties' submissions, the Court denies all three of Defendant's motions, in addition to his requests for evidentiary hearings.

**I.    Background**

On April 18, 2014 Oklahoma City Police Department (OCPD) officers executed a search warrant at Mr. Hunt's residence. The warrant was supported by an affidavit from OCPD Detective Tim Hock and stemmed from an incident on April 12, 2014 involving Mr. Hunt, and two other individuals, Latosha Caldwell and Kevin Fair. The three got into an argument outside Mr. Hunt's residence that allegedly resulted in Mr. Hunt throwing rocks and firing off several gunshots at Ms. Caldwell and Mr. Fair's van while they fled. During the search of Mr. Hunt's residence, officers found marijuana packaged for

1

distribution, digital scales, crack cocaine, PCP, $246.00 in cash, and two firearms—a .380 caliber pistol and an AR-15 rifle.

Mr. Hunt was subsequently arrested and placed in the back seat of a patrol car. At that time, he told law enforcement he wanted to talk. OCPD Inspector Scott Samuel read Mr. Hunt his rights and Mr. Hunt told the officer that the marijuana, digital scales, money, and .380 caliber pistol were his, but denied ownership of the crack cocaine, PCP and AR-15 rifle. Mr. Hunt was then transported to Oklahoma County Jail and booked in on multiple charges. Five days later, on April 23, 2014, OCPD Detective Hock and Chris Cargill conducted a follow-up interview with Mr. Hunt at the jail. Mr. Hunt was advised of his rights and then largely confirmed the statements he made on April 18th—he also provided his side of the story and clarified that he did in fact own the AR-15 rifle.

About four months after that, Mr. Hunt—who had made bail on his earlier charges—was again arrested by OCPD. The events that led to his second arrest occurred on August 18, 2014. On that date, OCPD Gang Unit Officers Jared Colvard and Daniel Kleehammer were on patrol in northeastern Oklahoma City, an area allegedly known for gang activity, when they noticed three men standing next to each other near 3829 Dunjee Boulevard. When the men saw the officers, they immediately dispersed in different directions. The officers exited their patrol vehicle and made contact with the three individuals. One of the individuals, Mr. Smith, allegedly told Officer Kleehammer that a fourth man who went by the name of "Dime Sack" had also fled the officer's attention. Mr. Smith allegedly told Officer Kleehammer that "Dime Sack" was in a vehicle parked near 3829 Dunjee Boulevard but that he exited the vehicle and ran to an apartment when law enforcement

pulled into the area. Officer Kleehammer saw the vehicle in the distance and approached. As he drew near, he smelled what he believed to be the scent of marijuana coming from inside the vehicle. Upon peering through the vehicle's passenger window, he saw a baggie of marijuana lying on the floorboard. He then opened the passenger door—the car was unlocked—and conducted a warrantless search of the vehicle to determine if any other contraband was present in the vehicle.

In his search, Officer Kleehammer recovered the following items: A bag of marijuana and a cellphone from the floorboard; a picture of people holding money and throwing up gang signs—one of whom he recognized as Mr. Hunt—from the dashboard; a cellphone from the driver's side door; cash and more marijuana in the center console; a black backpack containing marijuana, cocaine, a .38 caliber revolver, and a box of .22 caliber rifle ammunition from the back seat; finally, he recovered a host of other items from the trunk, including an envelope containing numerous letters addressed to Mr. Hunt.

On November 6, 2019, the Government filed its third superseding indictment as to Defendant Dominic Hunt. Doc. No. 41. Therein, Mr. Hunt was charged with nine offenses—seven based upon the events in 2014, and two based upon events in 2019. The 2014 offenses are largely built upon the evidence law enforcement recovered in their searches of Mr. Hunt's vehicle and residence, in addition to the incriminating statements Mr. Hunt made while speaking with law enforcement on April 18th and 23rd. Mr. Hunt now seeks to suppress that evidence.

## II. Defendant's Motion to Suppress Evidence Found During the Search of Defendant's Vehicle and Request for Hearing.

In his first motion, Mr. Hunt contends that the warrantless search of his vehicle was a violation of his Fourth Amendment rights, and that the evidence gathered as a result of the search should be suppressed. Doc. No. 68. Mr. Hunt alleges—without any factual basis or legal support—that law enforcement did not have probable cause to search his vehicle. *Id.* at 2. The Government responds, arguing that Mr. Hunt does not have a Fourth Amendment right as to his vehicle, and that even if he does, the warrantless search of his vehicle was supported by a combination of exceptions to the Fourth Amendment's warrant requirement. Doc. No. 78, p. 8–11. Because Mr. Hunt does not provide any factual or legal support for his motion, the Court "need not devote much time to his argument." *United States v. Quintana-Grijalva*, 332 F. App'x 487, 491 (10th Cir. 2009).

In any case, the Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. However, "a warrantless search and seizure of abandoned property is not unreasonable under the Fourth Amendment . . . because when individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had." *See Quintana-Grijalva*, 332 F. App'x 487, 491 (10th Cir. 2009)). According to the Tenth Circuit, a defendant who has fled from his vehicle on foot in the presence of law enforcement does not retain a reasonable expectation of privacy in the vehicle. *See id.* at 491–92. Here, the Government alleges, and Mr. Hunt does not deny, that Officer Kleehammer was told by Mr. Smith—one of the individuals who

initially dispersed upon the officer's arrival in the area—that a man named "Dime Sack," later identified as Mr. Hunt, had fled his vehicle once law enforcement arrived on the scene. Doc. No. 78, p. 11–12, n.4. In accordance with *Quintana-Grijalva,* Mr. Hunt "did not retain a reasonable expectation of privacy in the [vehicle] or any of its contents when he fled from the [vehicle], leaving the doors [unlocked] and the marijuana (and other objects) inside." *See Quintana-Grijalva*, 332 F. App'x 487 at 492.[1] Therefore, Mr. Hunt does not have a Fourth Amendment right to seek suppression in the first instance. *Id.* at 491 (quoting *United States v. Garzon,* 119 F.3d 1446, 1449 (10th Cir. 1997) for the proposition that "a defendant lacks standing to complain of an illegal search or seizure of property which has been abandoned.").

Nevertheless, assuming Mr. Hunt's vehicle was not abandoned, his motion to suppress is still subject to denial. "In general, warrantless searches and seizures are per se unreasonable, but that rule is subject to several exceptions." *United States v. Romero*, 935 F.3d 1124, 1127–28 (10th Cir. 2019) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). Here, the Government contends that three exceptions are particularly relevant.

The first is the automobile exception. "Under that exception, officers possessing probable cause to believe a car contains contraband may search the car without first obtaining a search warrant." *United States v. Beckstead*, 500 F.3d 1154, 1165 (10th Cir. 2007). "Once the officer's suspicions rise to the level of probable cause, they are

---

[1] That Mr. Hunt may have fled because of the OCPD's presence has no effect on the Court's analysis. *See United States v. Flynn*, 309 F.3d 736, 738 (10th Cir. 2002) ("[P]olice pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary.") (alteration in original) (quoting *United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir.1983)).

5

empowered to search 'the entire vehicle . . . .'" *United States v. Chavez,* 534 F.3d 1338, 1345 (quoting *United States v. Bradford,* 423 F.3d 1149, 1160 (10th Cir.2005)). "If this justification for searching a vehicle exists, it does not vanish simply because the vehicle has been immobilized." *United States v. Sparks*, 291 F.3d 683, 690 (10th Cir. 2002) (internal citation omitted). "Nor does it require a reviewing court to determine that the vehicle might have been driven away, or its contents tampered with, during the period required to obtain a search warrant." *Id.*

The second exception is the plain view doctrine. This doctrine allows a police officer to properly seize evidence of a crime without a warrant if: "'(1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent . . . and (3) the officer had a lawful right of access to the object itself.'" *Id.* (quoting *United States v. Carey,* 172 F.3d 1268, 1272 (10th Cir. 1999)).

The third exception—the plain smell doctrine—is a "logical extension of the plain view doctrine" which permits warrantless searches and seizures based upon an officer's detection of the smell of illegal substances. *United States v. Angelos*, 433 F.3d 738, 747 (10th Cir. 2006) (internal quotation marks omitted); *Cf. United States v. Collins*, 534 F. App'x 743, 746 (10th Cir. 2013) ("[W]e have repeatedly held that an officer's detection of the smell of drugs can be an independently sufficient basis for probable cause."); *United States v. West,* 219 F.3d 1171, 1178 (10th Cir.2000) (collecting cases).

Courts, including the Tenth Circuit, have utilized these exceptions in combination to uphold warrantless vehicle searches. *See, e.g., United States v. McGehee*, 672 F.3d 860,

6

869 (10th Cir. 2012) (upholding a warrantless search and seizure based upon the automobile exception, in addition to the plain view and plain smell doctrines); *Sparks*, 291 F.3d at 690–92 (collecting cases upholding warrantless searches and seizures based upon the automobile exception, in addition to the plain view doctrine and holding the same).

Here, the Government argues that Officer Kleehammer's warrantless search and seizure was valid because he searched a vehicle, implicating the automobile exception. Doc. No. 78, p. 8. Additionally, his search was supported by probable cause after he smelled marijuana coming from the vehicle, implicating the plain smell doctrine, and after he saw a baggie of marijuana on the vehicle's passenger-side floorboard, implicating the plain view doctrine. *Id.* at 8–11.

In accordance with the Circuit's instruction, the initial question the Court must address is whether the scent of marijuana emanating from the vehicle, in addition to the baggie of marijuana on the passenger-side floorboard "came lawfully within" Officer Kleehammer's plain smell, and plain view, respectively. *See Sparks*, 291 F.3d at 691. First, Officer Kleehammer was within his lawful right—while patrolling an area known for drug activity, violent crime, and gang activity—to walk up to Mr. Hunt's vehicle, especially considering he had been informed that an individual fled the vehicle after seeing law enforcement in the area. Thus, standing outside the vehicle, Officer Kleehammer was in a lawful position when he picked up the "odor of fresh marijuana coming from the car." Doc. No. 78, p. 7; *cf. United States v. Zabalza*, 346 F.3d 1255, 1259 (10th Cir. 2003) ("This court has long recognized that marijuana has a distinct smell and that the odor of marijuana

alone can satisfy the probable cause requirement to search a vehicle . . . ." (quoting *U.S. v. Morin*, 949 F.2d 297, 300 (10th Cir. 1991))).

Additionally, Officer Kleehammer spotted the baggie which ultimately led to the search of the vehicle—laying on the passenger-side floorboard—by simply peering through the passenger-side window. *See* Doc. No. 78, p.7. In that regard, the baggie was certainly in plain view. *See Sparks*, 291 F.3d at 692 (noting that a bag of drugs "would have been in plain view even if the driver's side door of the truck had been closed [because] [it] could have been seen through one of the windows of the truck[]."). Mr. Hunt had "no legitimate expectation of privacy shielding that portion of the interior of" his vehicle which could have been "viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Id.* at 691 (quoting *Texas v. Brown,* 460 U.S. 730, 740 (1983) and citing *Horton v. California,* 496 U.S. 128, 133 (1990) for the proposition that "[i]f an article is already in plain view, . . . its observation . . . [does not] involve any invasion of privacy.").

At that juncture, having smelled the marijuana coming from Mr. Hunt's vehicle, and having observed the baggie of marijuana in plain view inside the vehicle, Officer Kleehammer had probable cause to conduct a warrantless search for controlled substances. *See, e.g., United States v. McGehee*, 672 F.3d 860, 869 (10th Cir. 2012) ("[A]fter smelling the PCP . . . [and] notic[ing] in plain view a . . . container in which PCP is commonly stored . . . there was probable cause to search the vehicle for controlled substances."); *Sparks,* 291 F.3d at 690 ("[I]f an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation, either alone or in combination with additional facts, has been held sufficient to allow the officer to conduct a probable cause search of the

vehicle."); *United States v. Collins*, 534 F. App'x 743, 746 (10th Cir. 2013) ("[W]e have repeatedly held that an officer's detection of the smell of drugs can be an independently sufficient basis for probable cause."); *United States v. Bradford*, 423 F.3d 1149, 1160 (10th Cir. 2005) ("Once probable cause to search is established, the officer may search the entire vehicle, including the trunk and all containers therein that might contain contraband.").

For these reasons, in addition to Mr. Hunt's failure to raise any legal or factual arguments in support of his motion, no evidentiary hearing is required. *See, e.g., United States v. Riddle*, 731 F. App'x 771, 780 (10th Cir. 2018) (noting that to warrant an evidentiary hearing, "the motion to suppress must raise factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in issue.") (internal quotation marks omitted). Mr. Hunt's first motion to suppress is hereby denied on the briefs.

    **III.**    **Defendant's Motion to Suppress Evidence Found During the Search of Defendant's Residence and Request for Hearing.**

In Mr. Hunt's second motion, he argues that the Court should suppress the evidence seized from his residence. Doc. No. 69. He asserts there was no probable cause to justify the issuing of a search warrant. *Id.* The Government objects, arguing that Mr. Hunt fails to carry his burden. Doc. No. 78, p. 12–13.

According to the Tenth Circuit, a search conducted pursuant to a warrant is presumptively lawful. *See United States v. McKneely*, 6 F.3d 1447, 1455 (10th Cir. 1993). The burden is therefore on the defendant to show any invalidity. *United States v. Harrison*, 566 F.3d 1254 (10th Cir. 2009). Here, Mr. Hunt has not even attempted to carry that

burden—his motion is conclusory and provides no argument regarding the search warrant's validity. *See* Doc. No. 69. For this reason, no evidentiary hearing is required. *See, e.g., Riddle*, 731 F. App'x at 780. Mr. Hunt's second motion to suppress is denied on the briefs.[2]

### IV. Defendant's Motion to Suppress Defendant's Incriminating Statements and Request for Hearing.

In his third and final motion, Mr. Hunt argues that the Court should suppress any incriminating statement he made to law enforcement. Doc. No. 70. He specifically requests that the Court schedule a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368, 370–71 (1964) to determine the voluntariness of his confessions. *Id.* at 3–4. The Government argues that Mr. Hunt's waiver was voluntary based on the totality of the circumstances, and further contends that Mr. Hunt fails, again, to present the Court with a single factual or legal argument to support his motion. Doc. No. 78, p. 17–22.

"It is a bedrock principle that the waiver of one's Fifth Amendment privilege against self-incrimination must be made 'voluntarily, knowingly and intelligently.' *United States v. Burson*, 531 F.3d 1254, 1256 (10th Cir. 2008) (quoting *Miranda v. Arizona,* 384 U.S. 436, 444 (1966)). To that end, "[a]ny confession obtained during a custodial interrogation may not be used by the prosecution against the defendant unless the prosecution

---

[2] Even if the Court were obligated to assess the validity of the warrant, Mr. Hunt's motion would remain subject to denial. Based upon the evidence in the record, the warrant is supported by probable cause. For example, it was supported by two reasonably trustworthy witnesses, and the investigatory work of OCPD Detective Tim Hock, *see* Doc. Nos. 78-1, 78-2, which is enough to establish probable cause. *See Hartz v. Campbell*, 680 F. App'x 703, 706 (10th Cir. 2017); *Hensley v. City of Nichols Hills*, No. 17-CV-827-R, 2017 WL 4683971, at *3 (W.D. Okla. Oct. 18, 2017). Even if the warrant was not valid, Mr. Hunt presents no argument attacking the presumption that the officers executed the warrant in good faith. *See United States v. Augustine*, 742 F.3d 1258, 1262 (10th Cir. 2014) ("An executing officer is generally presumed to be acting in good-faith reliance upon a warrant."); *United States v. Soderstrand*, 412 F.3d 1146, 1153 (10th Cir. 2005) ("When officers execute a search warrant in reasonably good faith reliance on its validity, evidence obtained through the warrant will not be suppressed even if the search warrant is ultimately determined to be invalid").

demonstrates the use of procedural safeguards effective to secure the Fifth Amendment privilege against self-incrimination."[3] *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008) (internal quotation marks omitted). Accordingly, before a custodial interrogation, law enforcement must advise the suspect of four rights:

> [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Florida v. Powell,* 559 U.S. 50, 59–60 (2010) (quoting *Miranda*, 384 U.S. at 479). When a defendant knowingly and voluntarily waives these "*Miranda*" rights absent intimidation, coercion, or deception, his statements are admissible. *See United States v. Cash*, 733 F.3d 1264, 1279–80 (10th Cir. 2013).

As the proponent of its admissibility, the Government bears the burden of establishing, by a preponderance of the evidence, that a voluntary waiver occurred. *See Colorado v. Connelly*, 479 U.S. 157, 168–69 (1986); *see also United States v. Lopez*, 437 F.3d 1059, 1062 (10th Cir. 2006). This Court must consider the totality of the circumstances to determine whether a defendant's waiver was voluntary. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *United States v. Hernandez*, 93 F.3d 1493, 1051 (10th Cir. 1996).

In accordance with its burden, the Government submits the following facts, which are left uncontroverted by Mr. Hunt, *see* Doc. No. 70, p. 1–3. On April 18, 2014, law enforcement executed a search warrant at Mr. Hunt's residence. Doc. No. 78, p. 3. After

---

[3] The Government concedes Mr. Hunt's statements were made during a custodial investigation. Doc. No. 78, p. 17.

finding drugs and firearms, law enforcement arrested Mr. Hunt and placed him in the back seat of a patrol car. *Id.* At that time, Mr. Hunt told law enforcement that he wanted to talk. *Id.* at 4. OCPD Inspector Scott Samuel read Mr. Hunt his *Miranda* rights, and asked if he understood those rights. *Id.* Mr. Hunt confirmed that he did, and then told law enforcement that he had been living at his residence for about a month, that the marijuana, digital scales, and money found in their search was his, and that he sold marijuana to friends. *Id.* He also denied ownership of the crack cocaine and PCP found in the house. *Id.* When asked about the two firearms that law enforcement found, Mr. Hunt admitted that one of the guns was his but denied knowledge of the other. *Id.* Law enforcement then transported Mr. Hunt to the Oklahoma County Jail.

Five days later, on April 23, 2014, OCPD detectives Hock and Cagill conducted a follow-up interview with Mr. Hunt at the Oklahoma County Jail. *Id.* Prior to the interview, Mr. Hunt was advised of his *Miranda* rights, which Detective Hock read directly from the OCPD advice of rights form. *Id.* Detective Hock then presented the form to Mr. Hunt, who read his *Miranda* rights out loud and signed the form. *Id.* Knowing his rights, Mr. Hunt then conveyed that he still wanted to speak to law enforcement. *Id.* He told the detectives his side of the story, and largely confirmed the statements he made on April 18, 2014 concerning his residence and ownership of the drugs, scales, money and firearms—he did, however, assert ownership of the firearm that he previously claimed was not his. *Id.* at 5.

Based upon the totality of the circumstances described above, the Government has satisfied its burden to show that Mr. Hunt's waiver was valid and without intimidation, coercion, or deception. *See Lopez*, 437 F.3d at 1062. In each situation, law enforcement

advised Mr. Hunt of his rights and after doing so made sure that Mr. Hunt understood those rights before proceeding with any questioning. In fact, on April 18th, it was Mr. Hunt who pursued a discussion with law enforcement even after he was told he did not have to talk, and on April 23rd, he acknowledged both orally and in writing that he understood his rights and nonetheless desired to speak to law enforcement.

The only specific argument made by Mr. Hunt that the Court can construe as suggesting his waiver was invalid is his assertion that "[i]t is unknown if Mr. Hunt was under the influence of any narcotics . . . to the point where he could not consent to a waiver of his constitutional rights . . . prior to speaking with law enforcement."[4] Doc. No. 70, p. 3–4. This assertion is not sufficient to require suppression, nor is it enough to justify an evidentiary hearing.

"The mere fact of drug or alcohol use will not suffice" to overcome evidence showing that the defendant "was sufficiently in touch with reality so that he knew his rights and the consequences of abandoning them." *United States v. Burson,* 531 F.3d 1254, 1258 (10th Cir. 2008). "[A] defendant must be impaired to a substantial degree to overcome his ability to knowingly and intelligently waive his privilege against self-incrimination." *Id*.

The record demonstrates that Mr. Hunt was sufficiently in touch with reality to waive his *Miranda* rights on April 18th. After requesting Inspector Samuel's attention and waiving his *Miranda* rights, Mr. Hunt was lucid enough to identify where he lived and to

---

[4] The Court assumes Mr. Hunt is not alleging he was intoxicated when he spoke to OCPD detectives on April 23rd. Assuming otherwise would mean that Mr. Hunt used narcotics while incarcerated in Oklahoma County Jail in violation of both state and federal law.

differentiate between his property and others'—again, he listed in detail that the marijuana, digital scales, money, and .380 pistol found at his residence were his, whereas the crack cocaine, PCP, and AR-15 rifle were not, Doc. No. 78, p. 4.[5] Such a showing—coupled with Mr. Hunt's failure to identify anything in the record suggesting that he was intoxicated when speaking to law enforcement—demonstrates that Mr. Hunt's waiver was valid. *See, e.g., Burson,* 531 F.3d at 1258–59. But even if Mr. Hunt were intoxicated on April 18th, he does not direct the Court's attention to anything in the record that overcomes the evidence discussed above demonstrating that he was capable of waiving his *Miranda* rights. Accordingly, an evidentiary hearing on the matter is not warranted. *See, e.g., Riddle*, 731 F. App'x at 780. Mr. Hunt's motion to suppress the incriminating statements he made on April 18th and 23rd is denied based upon the parties' briefing.

V. **Conclusion**

For the foregoing reasons, the Court hereby denies Defendant Dominic Hunt's Motions to Suppress Evidence Found During an Illegal Search of his Vehicle and Residence and Request for Hearing, Doc. Nos. 68, 69, in addition to his Motion to Suppress Evidence and Request for *Jackson v. Denno* Hearing, Doc. No. 70.[6]

---

[5] That Mr. Hunt later acknowledged the AR-15 rifle was his does not alter the Court's conclusion that he was lucid enough to waive his *Miranda* rights on April 18th. *See, e.g., United States v. Curtis,* 344 F.3d 1057, 1065–67 (10th Cir. 2003) (finding a valid waiver where the defendant slurred his speech, closed his eyes throughout the interview, and thought long and hard before answering questions, but where there was no obvious indication that "his will was overborne").

[6] Before concluding, the Court notes its frustration with the conduct of Defendant's counsel, Edward Blau. As mentioned throughout the Court's order, counsel fails to raise factual or legal arguments in support of the motions to suppress filed on his client Mr. Hunt's behalf. In each motion, he simply recounts the facts and introduces a conclusory challenge pursuant to either the Fourth or Fifth Amendment. Motions filed without any argument, like those filed by Defendant here, place an undue burden on the Government and the Court; Mr. Blau is admonished to avoid the same should he appear before the Court in the future.

**IT IS SO ORDERED** this 5th day of May 2020.

_/s/ David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE